283 So.2d 744 (1973)
STATE of Louisiana
v.
Reuben COLLINS.
No. 53252.
Supreme Court of Louisiana.
September 24, 1973.
Rehearing Denied October 26, 1973.
Carrick R. Inabnett, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Counsel to Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Monroe, for plaintiff-appellee.
*745 MARCUS, Justice.
Reuben Collins, after being charged in a bill of information with the crime of simple burglary, R.S. 14:62, was tried before a jury, found guilty and sentenced to nine years at hard labor. He now appeals his conviction and sentence, relying upon four bills of exceptions for reversal thereof.
We find merit in Bills of Exceptions Nos. 3 and 4 and grant a new trial.
Defendant was arrested and charged with two burglaries in Monroe, Louisiana. The first involved the ARCO Service Station on the night of July 10-11, 1972; the second one was at the Green Light Cafe on July 31, 1972.
On August 1, 1972, Collins confessed to both of these burglaries, which confessions were taped at the same sitting. The Green Light Cafe confession was taped at 2:05 P. M., and the ARCO confession was taped at 2:17 P. M. Prior to making the confessions, defendant signed a written waiver of his constitutional rights. Additionally, before making each statement, he was advised of his constitutional rights. Apparently, certain questions were asked on the first tape that were not repeated on the second. Also, a more complete version of the Miranda warnings was recorded on the first tape.
This appeal is from the trial of the ARCO Service Station burglary.
Defendant took the stand on his own behalf during the trial of this matter. According to the testimony attached to Bills of Exceptions Nos. 3 and 4, while Collins was being cross-examined by the district attorney, he was asked:
"Q. Isn't it true that before you gave that statement you gave another statement?
"A. Before I gave that statement I gave another statement?
"Q. That is right. That is my question.
"A. Well, I wouldn't say no because for all I know he could have had the tape on then.
"Q. Well, let me read you a statement, a portion of a statement, that was taken starting at 2:05. Now, I want to remind you that that tape we heard was started at 2:17. Now, let me read to you from the page"
It was at this time that defense counsel objected to the reading of the earlier statement made in connection with the Green Light Cafe burglary on the grounds that it was related to another crime and was irrelevant. The trial judge overruled the objection based upon the district attorney's contention: "I am just using it for impeachment purposes. He has denied making it. He said he didn't know if he made it or not." At this point, Bill of Exceptions No. 3 was reserved.
The district attorney proceeded to read from defendant's Green Light Cafe confession, but chose to use only the portion in regard to the Miranda warnings. However, in using this portion of the defendant's 2:05 P. M. statement, a reference was made to the fact that it was given in connection with the Green Light Cafe burglary and also contained an acknowledgment by defendant that he had been arrested and charged with that burglary. Defense counsel moved for a mistrial on the same grounds that he had previously objected to the introduction of the evidence. His motion was denied, and he reserved Bill of Exceptions No. 4.
Defendant relies on Article 770 of the Code of Criminal Procedure in urging that reference by the district attorney to defendant's confession of the Green Light Cafe burglary constituted a mandatory ground for a mistrial. Article 770 provides in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a *746 court official, during the trial or in argument, refers directly or indirectly to:
"* * *
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
"* * *"
We conclude that, since the reference made by the district attorney to the other burglary was not admissible in evidence, it constituted a mandatory ground for mistrial.
Our conclusion is based upon the following reasons:
In the first place, the parties concede that reference to the other crime was not used to show knowledge, system or intent. We agree as there is no evidence in the record before us to warrant a conclusion that reference to the Green Light Cafe burglary was admissible to show knowledge, system or intent under R.S. 15:445 or R.S. 15:446.
The State contends that defendant denied being questioned as to his educational background as well as being advised of his constitutional rights at the time of his confession. Hence, it is asserted that it was necessary to use a portion of the 2:05 P. M. statement for impeachment purposes, and the reference to the Green Light Cafe burglary was done only to comply with the law requiring that a foundation be laid, calling attention of the witness to the time, place and circumstances surrounding the alleged prior inconsistent statement. R.S. 15:493.
While the record before us is not complete and does not show that defendant denied either that he was asked about his educational background or that he was advised of his constitutional rights,[1] we will assume that there was sufficient testimony during defendant's direct examination to warrant the use of the portion of the 2:05 P.M. statement for impeachment purposes. However, we are of the opinion that it was unnecessary for the State to have used that part of the statement which made reference to the Green Light Cafe burglary. A proper foundation could have been laid without making such a reference.
It is well settled that when the accused voluntarily takes the stand as a witness on his own behalf, he is subject to cross-examination upon the whole case. R.S. 15:462. He is also subject to impeachment, as any witness, by the showing of a prior inconsistent statement where that statement is relevant to a material fact in the case. The law is quite express that no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested. R.S. 15:495.
R.S. 15:495 provides:
"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein. As amended Acts 1952, No. 180, § 1."
In State v. Prieur, La., 277 So.2d 134 (1973), we stated the principle as follows:
"In Louisiana as in all jurisdictions, when a defendant takes the stand, he *747 waives his privilege under the Fifth Amendment and subjects himself to cross-examination on the entire case. R.S. 15:462; State v. Cripps, 259 La. 403, 250 So.2d 382 (1971). This includes the right of the State to impeach his testimony or attack his credibility. R.S. 15:486. A limitation is placed on the State, however, insofar as it may use evidence of other crimes. Only evidence of conviction of a crime is admissible, not arrests, indictments, or prosecutions. R.S. 15:495."
In State v. Perkins, 248 La. 293, 178 So. 2d 255 (1965), we reversed the conviction, recognizing that the purpose of R.S. 15:495 was "to clothe the defendant with a mantel of protection against any evidence of prior arrests or charges for the reason that such information is prejudicial." See also State v. Carite, 244 La. 928, 155 So.2d 21 (1963) for a similar holding.
Recently, in State v. Guillot, La., 277 So.2d 146, handed down May 7, 1973, we set aside a conviction when, on cross-examination, a witness was asked by the prosecutor several questions about whether or not he had knowledge that the defendant had been previously involved in an automobile accident while intoxicated. We concluded that the remark was within the mandatory language of Article 770 since the evidence as to defendant's prior criminal conduct was not admissible to show knowledge, system or intent. We held that the granting of a new trial was mandatory.
Accordingly, we conclude in the instant case that the district attorney's reference to defendant's arrest and charge in connection with the Green Light Cafe burglary was improper and constitutes a mandatory ground for mistrial under Article 770. Furthermore, it constitutes a substantial violation of defendant's statutory rights.
Having concluded that Bill of Exceptions Nos. 3 and 4 warrant the granting of a new trial, we find no need to pass upon Bills of Exceptions Nos. 1 and 2.
For the reasons assigned, the conviction and sentence are annulled and set aside, and the case is remanded for a new trial.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
The Court falls into error when it holds that the evidence to impeach the credibility of the defendant used here is the type evidence contemplated by Section 495 of Title 15 of the Revised Statutes. Here evidence of a prior statement was used to contradict an in-court statement. When a witness denies in court, in answer to a proper question, that he made a particular statement prior to the trial, that statement may be used to contradict his in-court denial. The plain terms of Section 493 of Title 15 of the Revised Statutes so provide:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
It should be recalled that this interrogation involved a denial by the defendant that he had received the Miranda warnings when he gave a written statement after his arrest for the crime charged. The issue presented by defendant's failure to concede that he had admitted he had sufficient education to understand the questioning or that he had been given the Miranda warnings were facts of vital concern to the State's case, bearing as these facts did upon the validity of the statement the State was relying upon.
*748 The reference to the arrests contained in the statement were inseparable parts of the Miranda warning. Without a reference to the arrest and charge, the Miranda warning was meaningless. It is, moreover, unrealistic to ask a witness if he was given the Miranda warnings and not imply by the question and its denial by the witness that an arrest was involved.
Section 495 contemplates initiating an examination to establish an arrest, indictment or prosecution as an independent source of impeachment. Here reference to the defendant's arrest was collateral to the subject matter concerning which he was being contradicted, but as stated, inseparable from the Miranda warning which he denied he had received. The reading of the statement was permissible as contradictory evidence under Section 493.
I respectfully dissent.
NOTES
[1] The testimony attached to these bills, reserved during the course of the trial, does not contain these denials by the defendant. This testimony is attached to Bill of Exceptions No. 1 reserved during trial of the motion to suppress.