451 So.2d 129 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Christine DEVILLE, Defendant-Appellant.
No. CR83-808.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1984.
*131 Wilford Carter, Lake Charles, for defendant-appellant.
Leonard Knapp, Jr., Dist. Atty., Karen Price, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before CUTRER, STOKER and KNOLL, JJ.
CUTRER, Judge.
Christine Deville was charged by bill of information with having committed the negligent homicide of her husband, Larry Deville, in violation of LSA-R.S. 14:32. After being found guilty as charged by a six person jury, the defendant filed a motion for a new trial. A hearing on the motion was held, and the motion was denied. Upon waiving sentencing delays, the defendant was sentenced to five (5) years imprisonment at hard labor without benefit of parole or probation.[1]

FACTS
On June 27, 1982, the defendant was attending a wedding reception being held for her niece at the White Eagle Lounge on Enterprise Boulevard in Lake Charles. She had arrived at the lounge at approximately 9:30 P.M., and many of her relatives were present on this evening. According to the defendant, she only drank two or three beers while at the reception and was not intoxicated. Her husband, Larry Deville, arrived some time after the defendant and, after drinking heavily, he became drunk.
The defendant and the victim, after living together for nine years, had married in 1981, but on the night of the reception they were separated. Apparently they had often separated and later reconciled. When the victim saw his wife sitting at a table with two other men in the lounge, he became agitated. According to O.C. Lewis, the defendant's brother, who was sitting at the table with the victim, the latter stated that he was going to hit the defendant when she returned from the restroom.
When the defendant walked up to his table, the victim told her harshly to give him his car keys. Lewis stated that the victim, true to his word, hit the defendant in the face with his fist as she was looking in her purse for the keys. Lewis' testimony of what had happened is as follows:
"Well, like I say, Larry was standing. So all of a sudden Larry punched her, and when he punched her I looked up at Larry, cause Larry's tall ... I say about six foot two ... I looked up at him, and then I seen the expression on his face. Then I looked back ... my sister had the gun pointed to his stomach. Now this happened so quick, before I could do anything or say anything, Larry hit the gun up with his left hand ... cause I'm watching that gun ... I'm not going to take my eyes off no gun ... anybody that takes eyes off a gun is crazy ... hit it, and when the bullet ... when he hit the gun, the bullet went off....."
The gun, a small .22 caliber pistol, was fired only once. The bullet entered the victim's chest above the heart. He was taken to a local hospital where he died a short time later.
The defendant testified that she could not remember taking the gun from her purse, nor could she remember firing it. She stated that she had never before fired a gun. The defendant said that all she *132 remembered was being hit in the mouth by the victim as she was searching for her keys. According to the defendant, her husband had given her the gun for protection as she had been robbed several times; she worked as a beautician and often made evening bank deposits. The defendant testified that she had inadvertently brought the gun with her on that Saturday evening, having earlier left it in the purse which she carried to the reception.
The defendant's sister, Ms. Willie Pearl Smith, was present and heard the shot fired. When she asked the defendant why she had shot the victim, the reply was, "Larry hit me in the mouth...."
The defendant appealed her conviction, raising three assignments of error. However, only two of those have been briefed. The third is deemed abandoned. State v. Washington, 430 So.2d 641 (La. 1983). The two assignments preserved on appeal allege that:
(1) The verdict is contrary to the law and the evidence in that the State failed to prove beyond a reasonable doubt that the defendant killed Larry Deville or that his death was the result of a negligent homicide; and
(2) The trial court erred in refusing to grant the defendant a mistrial when the State, during trial, made impermissible references to two prior arrests of the defendant.

ASSIGNMENT OF ERROR NUMBER 1
By this assignment the defendant argues that the State provided insufficient evidence upon which a conviction of negligent homicide could be based.
Under the law, we are called upon to review the evidence in the light most favorable to the prosecution; only if we then find that any rational factfinder could not have found that the State proved every element of the crime beyond a reasonable doubt can we supplant the factual findings of the lower court. With this standard in mind, we review the defendant's claim of insufficient evidence.
Negligent homicide is defined in LSA-R.S. 14:32 as being "the killing of a human being by criminal negligence." There is no question that the defendant held and fired the .22 caliber pistol whose discharge resulted in the victim's death a short time later. The victim was 31 years of age at the time of his death and in good health prior to the shooting. His death resulted from massive hemorrhaging and shock caused by the bullet from the pistol fired by defendant.
Criminal negligence is defined in LSA-R.S. 14:12 as follows:
"Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."
In the instant case, the trial judge has favored us with a per curiam opinion as to this issue. The pertinent portion of that opinion, with which we are in agreement, states the following:

"The evidence showed that the Defendant, who was in no real physical danger from the intoxicated victim, Larry DeVille, took a pistol from her purse in a crowded night club and pointed it at victim, Larry DeVille, and that the victim was killed with a bullet fired from the pistol in the Defendant's hand. The evidence further showed that at the time of the shooting the Defendant's brother was near the Defendant as well as other members of her immediate family, and that the Defendant had ample opportunity to withdraw from the victim or to move away from the decedent, if she had desired, or to have sought protection from her family members who were nearby. A jury could reasonably conclude beyond a reasonable doubt from the facts of this case that the Defendant under those circumstances was guilty of a gross deviation below the standard of care expected *133 to be maintained by a reasonably careful person under like circumstances....."
The victim's attempt to knock the gun from the defendant's hand does not negate the defendant's unreasonable and criminally substandard behavior in pointing a loaded gun at the victim's body. The State provided expert testimony that the gun causing the fatal injury had a trigger pull weight of 13 pounds 10 ounces in the double action mode (without the hammer being cocked) and of 5 pounds 3 ounces with the hammer being cocked initially. Further, these weights were slightly above normal and clearly prevented the gun from being classified as having a "hair trigger." The defendant's actions were clearly criminal negligence and resulted in the killing of Larry Deville. Also, see State v. Parker, 431 So.2d 114 (La.App. 1st Cir.1983), writ den., 435 So.2d 433 (La.1983). State v. Robinson, 423 So.2d 1053 (La.1982); State v. Bradley, 414 So.2d 724 (La.1982); State v. Herrod, 412 So.2d 564 (La.1982).
The defendant also argues without force or authority that she acted in self-defense when she shot the victim. There is obviously a conflict present when one attempts to argue on one hand that the gun discharged accidentally and then alternatively argues that the actions were justifiable as being in self-defense. Nevertheless, when the defendant raises the issue of self-defense, the State bears the entire and affirmative burden of negating that defense. State v. Savoy, 418 So.2d 547 (La. 1982); State v. Collins, 306 So.2d 662 (La. 1975). The State has clearly met its requisite burden of proof.
LSA-R.S. 14:20 provides in pertinent part as follows:
"A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or
(2) When committed, for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm, by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing."
The evidence at trial indicated that the victim hit the defendant once in the mouth with his fist prior to being shot. This occurred at a wedding reception being held for one of the defendant's nieces; in attendance were many of the defendant's family. Lewis, the defendant's brother, was sitting at the table with the victim and was privy to all that transpired. Testimony at trial indicated that the defendant and the victim had engaged in various marital disputes. The defendant, who claimed the victim often struck her, had, however, never received any medical treatment for alleged injuries suffered at the victim's hands.
Even had there been a history of past physical abuse of the defendant by the victim, her actions in shooting him under the attendant circumstances would not be justified. See State v. Brown, 414 So.2d 726 (La.1982). This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER 2
The defendant contends that the trial court erred in denying her motions for a mistrial, when the State allegedly made reference to prior arrests of defendant. Defendant was on cross-examination when the State asked her if she had been convicted of a crime. At first the defendant denied any conviction, but after her memory was refreshed, she admitted that she had been convicted of child neglect for which she was sentenced to two months in jail. This occurred in 1964. Such a question is permitted for the purpose of impeaching *134 the defendant as a witness. LSA-R.S. 15:495.[2] This contention lacks merit.
The second allegation of defendant is that the State referred to other arrests of defendant in the State's examination of the victim's mother.
We have examined the dialogue and we find in this exchange the State was asking the mother whether defendant was out of jail at the time of the victim's funeral. The mother replied that defendant was still incarcerated at the time of Larry's funeral.
A reading of this dialogue clearly shows that the incarceration of defendant, referred to by the prosecutor and the mother, was the incarceration growing out of the commission of the offense in question.
Such a reference to the same offense as that which is charged does not violate LSA-R.S. 15:495. Also, the trial judge, out of an abundance of caution, admonished the jury to disregard the question and answer. This contention has no merit.
For these reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
KNOLL, J., concurs in part, dissents in part and assigns reasons.
KNOLL, Judge, concurring in part and dissenting in part.
I concur in the conviction.
I respectfully dissent from the imposition of the sentence under LSA-C.Cr.P. Art. 893.1. The defendant was convicted of negligent homicide, a violation of LSA-R.S. 14:32. The sentencing court by-passed the sentencing provision of R.S. 14:32 and imposed the enhanced penalty provided in Article 893.1. The imposition of sentence in such a manner makes Article 893.1 a crime rather than serving as an enhanced penalty. The case should be remanded to the trial court for the proper imposition of sentence.
For the foregoing reasons, I respectfully dissent in part from the majority opinion.
NOTES
[1] This sentence was properly imposed under the strictures of LSA-C.Cr.P. art. 893.1, which mandates the penalty to be levied under R.S. 14:32, when a firearm has been used during the commission of negligent homicide.
[2] LSA-R.S. 15:495 provides:

"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein."